# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAURICE DANIEL JAMES TALLEY, | Case No. 2:16-cv-00957-APG-VCF |
| Petitioner, | **ORDER** |
| v. | |
| D.W. NEVENS, et al., | |
| Respondents. | |

This *pro se* 28 U.S.C. § 2254 habeas petition by Maurice Daniel James Talley is before the court for adjudication on the merits (ECF No. 1).

I. **Background & Procedural History**

On November 21, 2013, Talley pleaded guilty to attempted murder with use of a deadly weapon (exhibit 11).[1] His attorneys had negotiated a global resolution of Talley's four felony criminal cases; as a result, the State dismissed 40 felony charges.[2] In this case (no. C287805), the state district court sentenced him to 96 to 240 months, with a consecutive term of 96 to 240 months for the deadly weapon enhancement, with 355 days' credit for time served. Exh. 16. The court entered the judgment of conviction on January 24, 2014. *Id.*

---

[1] Exhibits referenced in this order are exhibits to respondents' answer to the petition, ECF No. 14, and are found at ECF Nos. 15-16.

[2] Respondents set forth the charges in the four cases in their answer (ECF No. 14, pp. 2-3). In the guilty plea agreement, Talley also agreed to plead guilty to first-degree kidnapping and robbery with use of a deadly weapon (case no. C287665), and robbery (case no. C288339). The State agreed to dismiss all charges in case no. 13FN0362C. *Id.*

1

Talley did not file a direct appeal. On December 18, 2015, the Nevada Court of Appeals affirmed the denial of Talley's state postconviction habeas corpus petition, and, after denying a motion for rehearing, remittitur issued on April 7, 2016. Exhs. 52, 59, 60.

On or about April 20, 2016, Talley dispatched his federal habeas petition for mailing (ECF No. 1). Respondents have now answered the petition, and Talley replied (ECF Nos. 52, 55).

II. **Legal Standards**

a. **Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing

the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate

3

panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. Finally, in conducting an AEDPA analysis, this court looks to the last reasoned state-court decision. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The

5

> *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ––––, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

Where a petitioner pleaded guilty upon the advice of counsel, he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . . . and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56-57, 59 (1985); *Lambert v. Blodgett*, 393 F.3d 943, 980-981 (9th Cir. 2004).

### III. **Instant Petition**

**Ground 1**

Talley's petition sets forth two grounds of ineffective assistance of counsel. In ground 1, he contends that his counsel failed to conduct a proper and reasonable investigation, which would have led to evidence of petitioner's actual innocence. He argues that counsel failed to interview a single witness, failed to move for the discovery, and failed to review the discovery he did have, which contained vital inconsistencies and exculpatory statements (ECF No. 1, p. 3). He further claims that surveillance video demonstrated that he was at his mother's home the night of the incident (ECF No. 1-1, p. 7).

Affirming the denial of his state postconviction petition, the Nevada Court of Appeals held:

> In the guilty plea agreement, Talley asserted he had discussed possible defenses with his attorney, but that he believed a guilty plea was in his own best interests. In addition, at the plea canvass, Talley acknowledged he was the person who had fired gunshots at a home and that he knew there were persons inside the home. Further, there was strong evidence of Talley's guilt, as he had previously threatened to harm persons who resided at the home, a witness viewed Talley shooting at the residence, and another witness viewed Talley's vehicle during the incident. We further note Talley did not demonstrate the surveillance video actually demonstrated he was at his mother's home during the incident, and therefore, failed to prove the factual allegations underlying his claim. *See Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 32 (2004). Under these circumstances, Talley failed to demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on trial had counsel further investigated this matter.

Exh. 52, p. 3.

The transcript of the grand jury proceedings reflects the following: Michael Coury testified that he was in the car with Talley and Ezra Peoples when Talley pulled up in front of the house, got out of the car and shot four or five times into the front window of the house. Exh. 3, pp. 19-20. Coury stated that neither he nor Peoples got out of the car during the incident. *See id.* at 22-24. Royann Briones testified that about 25 friends and family members had gathered at her house on the night in question to watch football and play poker when she suddenly saw smoke, saw people diving to the ground, realized that someone was shooting, and was then struck by a bullet that came through the window. *Id.* at 37-40. Briones suffered a "through and through" injury; she stated that a bullet struck her in the left hip area and exited through her right abdomen, requiring emergency surgery. Her husband, Ronald Twito, testified that he heard four shots. *Id.* at 52-53. Dominique Lopez testified that she was upstairs in the house, heard noises, looked outside and saw someone was shooting. Lopez stated that she saw Talley's vehicle and that Talley had been to her home before and had threatened to

7

return with a gun. *Id.* at 68-69, 75-76. A police detective testified that he located four bullet cartridge shell casings at the scene. *Id.* at 82.

The grand jury indicted Talley for battery with use of a deadly weapon resulting in substantial bodily harm; 4 counts attempted murder with use of a deadly weapon; 9 counts assault with a deadly weapon; and 3 counts discharging firearm at or into a structure. Exh. 4.

During the plea canvass, in response to the state district court's questioning, Talley stated that he had had a full opportunity to discuss the single charge of attempted murder with use of a deadly weapon in the amended indictment and the guilty plea with all three of his attorneys, that he understood the rights he was waiving, and that he had no questions. Exh. 13, pp. 3-6. He stated that he knew people were inside the house, and he shot into the house with the intent to kill one or more people. *Id.*

Talley claims that his plea counsel was ineffective for failing to properly investigate. Talley states that his mother had video surveillance footage that showed that he was at her house the night of the shooting. However, respondents are correct that, even if surveillance footage exists, he did not inform counsel about the video until after he pleaded guilty (*see* ECF No. 1-1, p. 7), so it cannot be a basis for counsel to be ineffective for advising Talley to enter into the plea agreement. Nor has Talley provided any specifics about the video to demonstrate that it actually establishes his innocence. Talley also makes the bare assertion in his federal petition that he told his counsel that he was willing to plea in his other cases but wanted to go to trial on this case. This claim strains credulity. Finally, Talley has failed to demonstrate any material inconsistencies in the witnesses' testimony.

**Ground 2**

Talley asserts that counsel failed to provide adequate consult and advice; counsel told Talley to plead guilty without assessing the case, and counsel failed to properly explain the consequences of the plea, including how the sentence would be structured (ECF No. 1, p. 5).

The Nevada Court of Appeals concluded that this claim was belied by the record because in both the guilty plea agreement and the plea canvass Talley acknowledged that he had discussed the case with his counsel, including the rights he was waiving, and that counsel had answered all of his questions. The court held that Talley failed to show a reasonable probability that he would have refused to plead guilty and would have insisted on going to trial had counsel further discussed the plea agreement with him. Exh. 52, pp. 3-4.

The relevant part of the plea canvass proceeded as follows:

> The Court: Well, you shot at a group of people, is that true?
>
> The Defendant: That's what it says.
>
> The Court: Well, did you do it or not?
>
> The Defendant: I'm pleading guilty, yeah.
>
> The Court: Well if you didn't shoot at a group of people, then you shouldn't be pleading guilty to this.
>
> The Defendant: Maybe you should tell the D.A. that.
>
> The Court: Okay. We – I can't accept our plea unless we go through the elements, and you said you're pleading guilty to attempt murder with use of a deadly weapon because, in truth and in fact, you are guilty. Now you may not have known who all these people were, but was there a group of people assembled together that had some men in the group, one or more men, and one or more women in the group?
>
> The Defendant: I guess, yes. Yes, yes I did.

9

|   | The Court: Okay. And were – and did you shoot at or into this group of people. |
|---|---|

        The Court:        Okay. And were – and did you shoot at or into this group of people.

        The Defendant:    To the house.

        The Court:        Okay. You shot into the house, and at that time you had reason to believe or to know that there would have been people inside the house, is that true?

        The Defendant:    Yes, ma'am.

        The Court:        All right. And you didn't know exactly who was in the house, but you knew that there were some people in the house. True?

        The Defendant:    Yes.

        The Court:        Okay. And you shot into the house with the intent to kill one or more people who may be in the house. Is that correct?

        The Defendant:    Yes.

        The Court:        All right. And the weapon, it's pretty obvious, that you used to shoot into the house was a firearm. Is that correct?

        The Defendant:    Yes.

Exh. 13, pp. 6-7.

        Talley argues that it is unreasonable to use his plea canvass as a basis to deny his claims (ECF No. 1-1, p. 18). However, that is the very purpose of the plea canvass; if a defendant has any confusion/questions/doubts about the guilty plea agreement, he has the opportunity to inform the court during the canvass. Talley points out that at the outset of the plea hearing, he equivocated as to whether or not he was guilty. Exh. 13, p. 6. However, immediately thereafter, Talley acknowledged in response to the court's questions that he shot into the house, knowing people were inside, with the intent to kill one or more people. *Id.* at 7.

This court concludes that Talley has not shown that the decisions of the Nevada Court of Appeals on federal grounds 1 and 2 were contrary to, or involved an unreasonable application of, *Strickland*, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is, therefore, denied as to grounds 1 and 2. Accordingly, the petition is denied in its entirety.

IV. **Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Talley's petition, the court finds that reasonable jurists would not find its determination of any grounds to be debatable pursuant to S*lack*. The court therefore declines to issue a certificate of appealability.

V. **Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 1) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

Dated: May 8, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE